✓ FILED     ___ LODGED
___ RECEIVED ___ COPY

APR 2 2 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ Z DEPUTY

SEALED

REDACTED FOR
PUBLIC DISCLOSURE

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

ADRIANA D. GENCO
Arizona State Bar No. 033397
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Adriana.Genco@usdoj.gov
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| United States of America, | No. **CR-25-00597-PHX-JJT (ESW)** |
|---|---|
| Plaintiff, | |
| vs. | **INDICTMENT** |
| | VIO: 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) Count 1 |
| Ajay Bajwa Kumar, | |
| Defendant. | 18 U.S.C. § 1001(a)(2) (Making False Statements) Count 2 |

**THE GRAND JURY CHARGES:**

At all times material to this indictment, within the District of Arizona and elsewhere:

**<u>INTRODUCTION</u>**

1.      A "phantom hacker scam" ("PHS") is a type of wire fraud wherein an unknown person ("UP") posing as an employee of a technology company, or the United States federal government contacts a victim (often elderly) by phone and falsely claims that the victim's bank account has been hacked or compromised. The purported employee or law enforcement agent informs the victim that they must move their funds to a third-party or government account to keep their funds safe from the supposed hackers.

2.    In these schemes, the UP often maintains communications with the victim through interstate and/or international voice calls, text messages, and/or messaging applications for weeks, during which the UP instructs the victim to withdraw all of the money from the victim's bank accounts and send the funds to the UP. The UP often gives express directions to the victim to withdraw specific amounts of money and send the funds via one of several methods, including wire transfers, cashier's checks, cash, or gold.

3.    In cases where victims are instructed to give cash and/or gold, the UP arranges with co-conspirators for a "courier" to meet the victim to collect the victim's assets. Couriers generally have a "handler" who provides the address of the victim and the time of the meeting. Couriers also receive a security code or passcode that they utter to the victim as a form of identification when they arrive to collect the cash or gold. Couriers are compensated for their role in the conspiracy.

4.    By asking the victim to withdraw the funds or gold from a financial institution and transferring the assets by hand to a courier, the conspirators effectively conceal the assets and thus make the proceeds of the fraud more difficult to trace and ultimately recover. In part, this is because cash and gold are not easily traceable and the victim is not told where the courier is taking the victim's assets or where the assets will ultimately be deposited.

5.    Once the courier obtains the assets from the victim, the courier typically delivers the assets to a co-conspirator, who then distributes the assets to other co-conspirators.

### MANNER AND MEANS OF THE CONSPIRACY

6.    The defendant, Ajay Bajwa KUMAR, is an Indian National residing in the United States. KUMAR served as a courier in a PHS conspiracy in which he picked up and attempted to pick up hundreds of thousands of dollars in cash and gold bullion from unsuspecting victims in Arizona and California.

7.    KUMAR and other co-conspirators communicated with one another through mobile application messaging services to coordinate their activities and work together to

launder funds obtained through PHS schemes targeting multiple victims. The communications shared through the messaging service included the victim's name, age, physical description, address, and the passcode KUMAR needed to provide the victim.

8.    KUMAR traveled to locations in the United States to collect cash and gold from the victims. After receiving the assets, KUMAR drove away without providing the victims with any information about where he would be taking the assets. Once hidden from sight from the victims, KUMAR reported the contents of the cash packages to his co-conspirators using interstate wire communications. KUMAR then delivered the cash to other co-conspirators. By doing so, KUMAR and his co-conspirators attempted to conceal, and did conceal, the source of the funds obtained illegally through the PHS wire fraud schemes.

9.    In furtherance of the above conspiracy, and to accomplish its objects and conceal the existence thereof, KUMAR and others performed acts in the District of Arizona, and elsewhere, including, but not limited to, the following:

a)    On or about November 18, 2024, KUMAR, picked up $35,000 in cash from Victim 1 at her residence in Corona del Mar, California.

b)    On or about November 19, 2024, KUMAR, picked up $120,000 in cash from Victim 2 at her residence in Vista, California, after KUMAR provided a codeword to Victim 2 that KUMAR had received from his co-conspirator.

c)    On or about November 19, 2024, KUMAR sent a text message to another co-conspirator confirming the pickup of $120,000 cash from Victim 2.

d)    On or about December 3, 2024, KUMAR, attempted to pick up approximately $500,000 worth of gold bullion from Victim 3 at his residence in Scottsdale, Arizona.

/ / /

/ / /

/ / /

/ / /

- 3 -

## COUNT 1
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

10.    Each of the foregoing allegations are incorporated by reference and re-alleged as though fully set forth herein.

11.    Beginning on an unknown date, but no later than November 18, 2024, and continuing through April 22, 2025, in the District of Arizona and elsewhere, defendant Ajay Bajwa KUMAR, knowingly and intentionally agreed, confederated, and conspired with others known and unknown to the grand jury, to commit Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 2
### False Statements
### (18 U.S.C. § 1001(a)(2))

12.    Each of the foregoing allegations are incorporated by reference and re-alleged as though fully set forth herein.

13.    In 2024, the Federal Bureau of Investigation ("FBI") in Phoenix and the United States Attorney's Office for the District of Arizona ("USAO") were conducting a federal criminal investigation into a PHS wire fraud scheme targeting a victim in Arizona (Victim 3) (the "Federal Investigation").

14.    On or about December 3, 2024, in an interview affecting the Federal Investigation in the District of Arizona, and in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the FBI and USAO, defendant Ajay Bajwa KUMAR knowingly and willfully made materially false statements and representations to the FBI knowing that these statements and representations were untrue:

a)    KUMAR falsely stated that he arrived at the residence of Victim 3 because he made a wrong turn while driving in the area. In fact, as KUMAR then knew, he deliberately arrived at Victim 3's residence after he received Victim 3's full address in a

- 4 -

message, and he entered Victim 3's address into a navigation system to direct him to the residence.

b)     KUMAR falsely stated that he was at the residence of Victim 3 to meet his cousin who was going to help KUMAR complete his legal paperwork. In fact, as KUMAR then knew, KUMAR was at the residence to collect a package containing gold from Victim 3.

c)     KUMAR falsely stated that he had never collected packages from unknown individuals. In fact, as KUMAR then knew, on at least two previous occasions, KUMAR collected packages containing US currency from individuals who KUMAR did not know.

All in violation of Title 18, United States Code, Section 1001(a)(2).


A TRUE BILL

*S/*
FOREPERSON OF THE GRAND JURY
Date:  April 22, 2025

TIMOTHY COURCHAINE
United States Attorney
District of Arizona


*S/*
ADRIANA D. GENCO
Assistant U.S. Attorney